IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DELORES MOTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 2895 |
| v. | ) | |
| | ) | Magistrate Judge |
| ROBERT PETRIE, individually | ) | Maria Valdez |
| and as an agent of CRST | ) | |
| MALONE, INC., and CRST | ) | |
| MALONE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ROBERT PETRIE and CRST | ) | |
| MALONE, INC., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM MOTTON, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is a Motion for Good Faith Finding and to Dismiss, [Doc. No. 61], filed by third-party defendant William Motton ("Mr. Motton"). Defendants, Robert Petrie ("Petrie") and CRST Malone, Inc. (collectively "Defendants"), oppose the Motion. The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies Mr. Motton's Motion.

# BACKGROUND[1]

Shortly after sunset, on September 22, 2012, Mr. Motton was driving with his wife ("Mrs. Motton") on Cottage Grove Avenue in Chicago, Illinois, when he struck a tractor-trailer parked near the intersection of Cottage Grove and 104th Place, which was operated by Petrie. Unfortunately, Mrs. Motton suffered extensive injuries from the accident, resulting in roughly $300,000 in medical expenses. She thus filed a complaint in Illinois state court against Defendants, alleging claims of negligence against Petrie and vicarious liability against his employer, CRST Malone. Mrs. Motton did not, however, name her husband as a defendant because she settled with his insurance company for $100,000 (the alleged policy limit) before this case was filed and signed a release of liability to that effect.

After removing Mrs. Motton's complaint to this Court, Defendants filed a third-party complaint against Mr. Motton, in which Defendants, *inter alia*, deny liability for Mrs. Motton's injuries and, in the alternative, seek contribution for Mr. Motton's alleged negligence. Mr. Motton responded by filing the instant Motion, claiming that he is excluded from liability as a matter of law pursuant to the Illinois Joint Tortfeasor Contribution Act ("the Contribution Act"), *740 ILCS 100/0.01-100/5*, which provides that a joint tortfeasor who settles in good faith with a plaintiff is immune from contribution liability. The Court then held an evidentiary hearing on March 18, 2015, which led to the following uncontroverted revelations: (1) Mr. Petrie's tractor-trailer was parked on the side of the road and therefore did

---

[1] The following facts are from the parties' submissions and are undisputed unless otherwise noted.

not obstruct Mr. Motton's path; and (2) Mr. Motton rear-ended the tractor-trailer while he was looking down at the radio.[2]

## STANDARD OF REVIEW

The Contribution Act provides that a tortfeasor who settles in good faith with the injured party is discharged from contribution liability. *740 ILCS 100/2(c), (d)*. The term "good faith" is not defined in the Act; instead, a finding of good or bad faith is committed to the sound discretion of the trial court. *Wreglesworth v. Arctco, Inc.*, 740 N.E.2d 444, 449 (Ill. App. Ct. 2000). Factors to consider in determining whether a settlement was made in good faith include: (1) whether the amount paid was within a reasonable range of the settlor's fair share; (2) whether there was a close personal relationship between the settling parties; (3) whether the plaintiff sued the settlor; (4) whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement; (5) facts tending to show wrongful conduct, collusion, or fraud; and (6) whether the settlement conflicts with the terms of the Contribution Act or its underlying policies. *Johnson v. United Airlines*, 784 N.E.2d 812, 824 (Ill. 2003). Importantly, no single factor is determinative; courts must consider all of the surrounding circumstances in determining whether a settlement was made in good faith. *Wreglesworth*, 740 N.E.2d at 449.

---

[2] To be clear, defense counsel recounted these facts, and, when asked if there were any discrepancies, Mr. Motton's counsel agreed with this version of what happened.

**DISCUSSION**

Mr. Motton contends that a finding of good faith is straightforward: he and his wife sat down for arms-length negotiations with their respective attorneys, settled for the maximum amount provided by his insurance policy ("the Policy"), executed a legally valid settlement agreement, and thereby released Mr. Motton from liability. Defendants, in contrast, contend that the release is irrelevant because it does not specifically name Mr. Motton. Furthermore, even if the release were interpreted to apply to Mr. Motton, Defendants argue there is indeed clear evidence of bad faith: the Motton's marriage; Mrs. Motton's decision not to sue Mr. Motton; the disproportionate value of the settlement to requested damages; the remaining $100,000 in liability limits under the Policy; and the injustice that would result by excluding Mr. Motton from contribution liability.

The parties' dispute thus boils down to two issues: (1) whether the failure to name Mr. Motton on the release is fatal to the settlement's applicability in this case; and (2) whether the settlement was made in good faith. The Court, however, declines to address the first issue because it finds that, even if the release were interpreted to include Mr. Motton, the totality of circumstances does not support a finding of good faith.

**I.  GOOD FAITH**

As an initial matter, the Court must clarify the standard for a finding of good faith. Mr. Motton claims that under the Contribution Act, "a settlement is considered *prima facie* in good faith when the settling party shows that [it] is

4

supported by consideration." (Motton's Rep. Br. at 5.) Thus, relying on *Alvarez v. Fred Hintze Construction*, 617 N.E.2d 821 (Ill. App. Ct. 1993), he asserts that the settlement here was indeed supported by consideration and therefore that Defendants now carry the burden of proving bad faith with clear and convincing evidence. Mr. Motton is mistaken.

The standard of proof was changed from "clear and convincing" to a "preponderance of the evidence" in 2003. *See Johnson*, 784, N.E.2d at 820. Perhaps more importantly, a legally valid settlement is the *minimum* needed to establish a preliminary showing of good faith, but it is not the *sine qua non* of good faith. *See id.; Bowers v. Murphy & Miller*, 650 N.E.2d 608, 611 (Ill. 1995) ("While we are prepared to say that an invalid agreement could never satisfy the good faith requirements of the Contribution Act, we are not prepared to say that all valid agreements are necessarily given in good faith. A competent plaintiff might, for whatever reason, give a release supported by some nominal consideration to a tortfeasor without regard to the tortfeasor's potential liability or the relationship between the consideration received and the tortfeasor's relative culpability.") Therefore, "other factual evidence may be necessary before the court may determine, as an initial matter, whether the settlement [was made in good faith] in light of the policies underlying the Contribution Act." *Johnson*, 784 N.E.2d at 820. Accordingly, the Court will now turn to the applicable *Johnson* factors.

5

*(1) The Settlement vs. Mr. Motton's Fair Share*

At the time of the accident, Mr. Motton was covered by Allstate Insurance Company policy no. 912740729. The Policy provided liability limits of $100,000 per person and $300,000 per incident, but contained a "household exclusion" for an insured's spouse. Thus, Mrs. Motton was "uninsured" with respect to the accident. Nonetheless, the Policy also provided identical coverage limits for "uninsured" persons, which, as discussed above, were exhausted by the settlement.

Now, Mr. Motton contends that because he settled for the maximum allowed under the Policy, it follows that he paid his fair share. Defendants disagree in two respects. First, Defendants claim that Mr. Motton did not, in fact, pay the maximum under the Policy because there is an exception to the "household exclusion" clause whereby an "uninsured" spouse can recover under the liability portion of the Policy if a third-party acquires a right of contribution against the insured. This means, according to Defendants, that Mrs. Motton could "stack" the "liability" and "uninsured" limits under the Policy and recover $200,000 instead of $100,000. Second, even if the Policy limits cannot be stacked, Defendants assert that a $100,000 settlement does not represent Mr. Motton's fair share because the alleged damages in this case are over $1,300,000.[3] The Court will address each issue in turn.

---

[3] Mrs. Motton's Complaint does not contain a specific number in the *ad damnum* clause, but Defendants indicate in their briefs that she is seeking roughly $300,000 for past medical expenses and over $1,000,000 for future costs. Mr. Motton does not dispute this in his reply brief.

6

(a) <u>Stacking</u>

Whether an insurance policy prohibits or permits stacking is a legal issue. *Hobbs v. Hartford Ins. Co. of the Midwest,* 823 N.E.2d 561, 564 (Ill. 2005). "If the policy language is unambiguous, [it] will be applied as written unless it contravenes public policy."[4] *Id*. Here, the anti-stacking clause for the liability section states:

> The limits shown on the Policy Declarations are the maximum we will pay for any single accident involving an insured auto. The limit stated for each person for bodily injury is our total limit of liability for damages because of bodily injury sustained by one person in any single accident involving an insured auto.

[Mr. Petrie's Mot., Ex. D at 7.] Similarly, the anti-stacking clause for the uninsured motorist section states:

> The coverage limit shown on the Policy Declaration for:
> 1. "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one accident.

[*Id.* at 17.] In other words, <u>one</u> injured person is matched against <u>the</u> limit of liability shown in the declarations ($100,000) rather than against multiple limits. Although there is no clause explicitly stating that a claimant may not recover under both the liability and uninsured motorists sections, the use of the definite article "the" combined with the quantifiers "each," "maximum," and "any" entails just that: *the* coverage limit for *each* person is the *maximum* that the Policy will pay in *any* accident. Accordingly, the Court finds that the Policy clearly and unambiguously prohibits stacking. *See Grinnell Select Ins. Co. v. Baker*, 362 F.3d

---

[4] The Illinois Supreme Court "has determined that anti-stacking clauses in general do not contravene public policy." *Hobbs,* 823 N.E.2d at 564.

1005, 1006 (7th Cir. 2004) (concluding that a similar anti-stacking clause unambiguously prohibited stacking).

    (b) <u>Mr. Motton's fair share</u>

Given the prohibition on stacking, it follows that $100,000 was the most Mr. Motton could have paid from his insurance policy. The issue, then, is whether $100,000 represents his fair share of the alleged damages. To that end, the amount of the settlement must be viewed in relation to the probability of recovery, the defenses raised, and the settling party's potential liability. *Johnson,* 784 N.E.2d at 823.[5] In light of these factors, the Court cannot say that Mr. Motton paid his fair share.

At the evidentiary hearing, the parties indicated that Mr. Petrie was safely parked on the side of the road, and that Mr. Motton rear-ended him while changing the radio. Thus, Defendants' claim that Mr. Motton's negligence was the sole proximate cause of the accident has real purchase. And it follows that a $100,000 settlement would not come close to representing his fair share of Mrs. Motton's past medical expenses ($300,000), much less her total alleged damages. Moreover, because Defendants further assert comparative fault as a defense, and Illinois law provides that a joint tortfeasor who is less than 25% at fault is severally liable rather than jointly liable, *see 735 ILCS 5/2-1117*, it is likely that Mr. Motton will be on the hook for 75% or more of Mrs. Motton's damages, which further grounds the conclusion that a $100,000 settlement would still be less than his fair share.

---

[5] In his brief, Mr. Motton notes that Illinois courts have routinely held that the disparity between a settlement amount and the *ad damnum* clause in a complaint is not an accurate measure of good faith. While this is true, it does not end the inquiry.

8

*(2) The Motton's Relationship and Mrs. Motton's Decision Not to Sue*

The disparity between Mr. Motton's and Mr. Petrie's respective fault is not the only reason to find bad faith under the TCA, however (although it might be sufficient). The Motton's marriage must also be considered. Of course, Mr. Motton claims there is nothing suspect about his wife's decision not to sue him, nor is there any reason to infer bad faith simply in virtue of their marriage. But Defendants contend the Motton's marriage and decision not to sue paint a different picture: a strategic move to remove Mr. Motton from the suit and thereby gain bargaining power over Defendants. Although the Court declines to comment on the Mottons' precise motivations, it nonetheless finds that the case law militates in favor Defendants.

True, as Mr. Motton notes, a close relationship between the settling parties or a plaintiff's failure to sue a settling party — alone — is insufficient to establish bad faith. *See generally*, *Pierre Condominium Ass'n v. Lincoln Park West Associates, LLC*, 881 N.E.2d 588, 317 (Ill. 2007); *Wreglesworth*, 740 N.E.2d at 684. But courts are more inclined to find bad faith when *both* factors co-occur along with other indicia of bad faith.[6] And that is exactly what we have here: Mrs. Motton did not sue her husband, nor has she offered an explanation for her decision not to do so. "The only reasonable inference to be drawn is that [she] did not do so because of the

---

[6] *Compare Bryant v. Perry*, 504 N.E.2d 1245, 1250 (Ill. App. Ct. 1986) (upholding a mother's settlement with her daughter where the mother was acting as her daughter's representative and was named a counter defendant in the daughter's personal injury action), *with Warsing v. Material Handling Servs.*, 648 N.E.2d 1126, 1130 (Ill. App. Ct. 1995) (finding bad faith where the settling parties' families were close, the third-party was not named as a defendant, and the settlement did not reflect the third-party's culpability).

9

relationship between the parties." *Warsing,* 648 N.E.2d at 1130. Combined with the disproportionate settlement/potential-liability ratio (discussed above), the Court cannot say that the Mottons' marriage and Mrs. Motton's decision not to sue were benign elements of the settlement.

*(3) The Policies Underlying the Contribution Act*

Ultimately, the Court is unwilling to hold that the settlement was made in good faith because it plausibly conflicts with Contribution Act's underlying policies. The Act seeks to promote both the encouragement of settlements and the equitable apportionment of damages among tortfeasors. *See In re Babb*, 642 N.E.2d 1195, 1207 (Ill. 1994). A finding of good faith must therefore strike a balance between those policies. *Associated Aviation Underwriters, Inc. v. Aon Corp.*, 800 N.E.2d 424, 433, 279 (Ill. 2003). In that respect, a settlement is considered not in good faith if its practical effect is to shift a disproportionally large and inequitable portion of the settling defendant's liability to the shoulders of another. *Stickler v. American Augers, Inc.,* 757 N.E.2d 573, 578 (Ill. App. Ct. 2001). And a finding of good faith here would do just that.

As discussed above, the difference between the settlement and alleged damages ($100,000 vs. $1,300,000) compared to Mr. Motton's potential fault is striking. Thus, while the Court is mindful that alleged damages do not necessarily reflect the amount recoverable at trial, it is clear that saddling Defendants with the majority of damages in this case would be inequitable. Moreover, a finding of good faith at this stage would prevent a jury from being able to apportion *any* fault to

Mr. Motton on the verdict form, which, given the developments at the evidentiary hearing, would be patently unjust. *See Ready v. United/Goedecke Svcs., Inc.*, 905 N.E.2d 725, 735 (Ill. 2008); *Miranda v. Walsh Grp., Ltd.*, 997 N.E.2d 895, 901 (Ill. App. 2013) (affirming that a "settling defendant . . . should not be named on the jury verdict form for the appropriation of fault.") As such, a finding of good faith would undermine the policies underlying the Contribution Act, and therefore Mr. Motton's motion is denied.

## CONCLUSION

For the reasons set forth above, Mr. Motton's Motion for Good Faith Finding and to Dismiss, [Doc. No. 61], is denied.

**SO ORDERED.**  **ENTERED:**

*/s/ Maria Valdez*

**DATE: March 30, 2015**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**